| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:17-CR-9(1) |
| | § | |
| THEODORE WILLIAM TAYLOR | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Theodore William Taylor's ("Taylor") *pro se* Motion Seeking Compassionate Release under 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g) (#222), wherein Taylor requests that the court modify his sentence and immediately release him from prison due to the threat of Coronavirus Disease 2019 ("COVID-19"). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Also pending before the court are Taylor's motions requesting the appointment of counsel (#s 224, 225). Having considered the motions, Probation's recommendation, and the applicable law, the court is of the opinion that the motions should be denied.

I.    Background

On October 10, 2018, a jury convicted Taylor of conspiracy to distribute, dispense, and possess with intent to distribute and dispense five controlled substances in violation of 21 U.S.C. § 846. On May 3, 2019, the court sentenced Taylor to 240 months' imprisonment, followed by a 3-year term of supervised release. His conviction was affirmed on appeal by the United States Court of Appeals for the Fifth Circuit on July 14, 2020. Taylor is currently housed at Federal Correctional Institution Seagoville, located in Seagoville, Texas ("FCI Seagoville"). His projected release date is October 24, 2035.

II.    Appointment of Counsel

Taylor requests the appointment of counsel to assist him with his motion for compassionate release.  There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).

The court, however, may, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues.  *See  United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court.").

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve

nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Taylor is not entitled to the appointment of counsel to assist him. *See United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Taylor had retained counsel at trial, and a retained attorney submitted his request for home confinement to the warden. He does not indicate that he is now indigent and qualifies for appointed counsel. Moreover, Taylor provides no basis for the court to conclude that the appointment of counsel would aid him in obtaining relief. As Taylor points out, he "is a Yale-educated physician and also holds a Ph. D. in Chemical Engineering." A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event, Taylor has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Taylor's motions for appointment of counsel (#s 224, 225) are denied.

III.   Compassionate Release

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C.

§ 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term

of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking

compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb.

27, 2014) (denying petitioner's motion for compassionate release because no motion for his release

was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3

(S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant

compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the

means to appeal the BOP's decision not to file a motion for compassionate release on the

defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United

States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The

plain language of the statute, however, makes it clear that the court may not grant a defendant's

motion for compassionate release unless the defendant has complied with the administrative

exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *United States v. Harris*, No. 20-1723, 2020 WL 4048690, at *1 (3d Cir. July 20, 2020); *United States v. Springer*, No. 20-5000, 2020 WL 3989451, at *3 (10th Cir. July 15, 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

On May 20, 2020, Taylor, through his attorney, submitted a request for home confinement to the warden of the facility where he is housed, which the warden denied because he did not meet the requirements for immediate release to home confinement.  Specifically, the warden noted that Taylor has not served at least fifty percent of his term of imprisonment.  There is no indication, however, that Taylor submitted a request for compassionate release to the warden of the facility. Taylor is foreclosed from obtaining relief if he has not submitted a request for compassionate

5

release based on the circumstances raised in the instant motion to the warden of the facility where he is housed.  The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period.  *See Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").  Accordingly, at this time, without evidence that Taylor has exhausted his administrative remedies, the court does not have the authority to grant the relief Taylor requests.  Moreover, even if he did comply with the exhaustion requirement before filing the present motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence and release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

A.    Age and Health

In the instant motion, Taylor, age 65, contends that he is eligible for compassionate release due to his medical conditions, stating that he suffers from Type II Diabetes, Hyperlipidemia, and Hypothyroidism.  He also claims to have a family history of heart disease and a Body Mass Index that exceeds 30.  In addition, he maintains that his medical conditions require a certain formulary which includes Meloxicam, a known immunosuppressive that further weakens his ability to defend against COVID-19.  The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).  Taylor attached limited medical records to his motion for compassionate release, which confirm his diagnoses of Type II Diabetes, Hyperlipidemia, and Hypothyroidism, and indicate that he was prescribed Meloxicam for unspecified joint pain.  A review of Taylor's Presentence Investigation Report ("PSR"), prepared in April 2019, reveals that he reported having Hyperlipidemia, Hypoglycemia, Hypothyroidism, and Benign Prostatic Hypertrophy.  His PSR also indicates that, at the time, Taylor weighed 215 pounds and stood 5 feet 11 inches tall.  According to the PSR, prior to being taken into custody, Taylor was prescribed Crestor for his cholesterol condition and Januvia for hypoglycemia.

8

The medical records Taylor submitted reflect that he is considered a chronic care inmate and is now prescribed atorvastatin for cholesterol problems, finasteride for prostate issues, levothyroxine for hypothyroidism, metformin for diabetes, meloxicam for joint and back pain, as well as low-dose aspirin and various other medications for unknown reasons.  Taylor's medical summary does not meet the criteria listed in the guidelines.  His reported medical conditions are not terminal, nor does they substantially diminish his ability to provide self-care.  Hence, Taylor has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.  Even if Taylor had provided evidence that he was suffering from such a medical condition, "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).  Where, as here, Taylor has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release after weighing the evidence.  *Id.* at 693-94.

The USSG provides that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B).  Here, although Taylor is 65 years old, there is no indication that he is experiencing serious deterioration in his physical or mental health.  Moreover, as of the date of his motion, Taylor had served approximately 18 months of his 240-month sentence, far below the lesser of 10 years or 75 percent of his term of imprisonment.

9

B.      Family Circumstances

Although the USSG acknowledges that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, it specifies the following qualifying conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii). Here, Taylor states that his immediate release is warranted because "he has dependents who require his physical, financial, emotional, and administrative support, and who suffer as a result of his incarceration away from home." According to Taylor's PSR, he has two adult sons. At the time the PSR was prepared, his sons were 21 and 20 years old and were living together. Thus, Taylor's adult children do not appear to require a caregiver. Further, Taylor's spouse, who was convicted as a codefendant in this matter, is serving her term of imprisonment at Federal Medical Center Carswell in Fort Worth, Texas, with an expected release date of February 15, 2032. Hence, Taylor fails to meet the requirements for family circumstances that establish extraordinary and compelling reasons.

C.      "Other" Reasons

Taylor's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts

are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Taylor for any "other" reason.   In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to Taylor's situation.  As of August 31, 2020, the figures available at www.bop.gov list 7 inmates (out of a total 1,741) and 3 staff members at FCI Seagoville as currently positive for COVID-19.  The figures also indicate that 1,343 inmates and 3 staff members have recovered, and 3 inmates have succumbed to the disease.  Therefore, although Taylor expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and

professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").   Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).  Thus, Taylor has failed to establish that other reasons exist that would constitute extraordinary and compelling reasons to release him from prison.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94.  The nature and circumstances of Taylor's offense of conviction entail his participation in a conspiracy to distribute, dispense, and possess with intent to distribute and dispense controlled substances,

including oxycodone, amphetamine salts, hydrocodone, alprazolam, and promethazine with codeine, over a two-year period.  He prescribed medications outside the scope of his professional practice and without a legitimate medical purpose, including prescribing medications without a proper medical screening of the patient and in a non-therapeutic manner.  Taylor prescribed opioids and other medications to patients who were known abusers of controlled substances, to patients who were receiving the same prescriptions from other doctors, and to persons brought to the clinic by "recruiters" for the purpose of obtaining prescriptions for controlled substances. Taylor's clinic took in cash proceeds of between $3,000 and $9,000 per day.  A search of his clinic revealed a handgun and a money counter, and a search of his residence produced $21,615 in currency, which were proceeds of the clinic, two handguns, and ammunition.  Taylor was found to have abused a position of trust as a licensed physician.  The jury made a finding that Taylor was responsible for 114 grams of oxycodone; 580 grams of amphetamine salts; 3,896 grams of hydrocodone; 542 grams of alprazolam; and 279 grams of promethazine with codeine.  Under the circumstances, the court cannot conclude that Taylor would not pose a danger to the safety of any other person or to the community, if released from confinement.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19.  In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See Collins*, 2020 WL 1929844, at *3.  The BOP notes that inmates need not apply to be considered for home confinement, as this

13

is being done automatically by case management staff.  To date, the BOP has placed 7,559 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without the authority to order home confinement.  18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

14

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)).  Here, Taylor's track record is also a poor one.

In short, Taylor has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 2020 WL 1940570, at *4-5 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 2020 WL 1940570, at *5.

IV.   Conclusion

In accordance with the foregoing analysis, Taylor's Motion for Compassionate Release (#222) and motions requesting the appointment of counsel (#s 224, 225) are DENIED.

SIGNED at Beaumont, Texas, this 1st day of September, 2020.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE