**UNITED STATES DISTRICT COURT**      **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:17-CR-9(1) |
| | § | |
| THEODORE WILLIAM TAYLOR | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Theodore "Tad" William Taylor's ("Taylor") *pro se* Motion Seeking Order for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i) (#259), wherein Taylor requests that the court reduce his sentence and immediately release him from prison.  The Government filed its Opposition to Taylor's Second Motion for Compassionate Release (#263), and Taylor filed a reply styled Response to Government's Opposition to Taylor's Compassionate Release Request (#267).   United States Probation and Pretrial Services ("Probation") conducted an investigation and prepared a report recommending that the court deny the motion.  Having considered the motion, the response, the reply, Probation's recommendation, and the applicable law, the court is of the opinion that the motion should be denied.

I.    <u>Background</u>

On January 18, 2017, a federal grand jury in the Eastern District of Texas returned a one-count Indictment charging Taylor, along with his wife, Chia Jean Lee, with Conspiracy to Distribute, Dispense, and Possess with Intent to Distribute and Dispense Controlled Substances, in violation of 18 U.S.C. § 846.  On October 10, 2018, a jury found Taylor guilty of the charged offense with respect to five controlled substances—oxycodone, amphetamine salts, hydrocodone, alprazolam, and promethazine with codeine (#123).  On May 3, 2019, the court sentenced Taylor to 240 months' imprisonment, followed by a 3-year term of supervised release (#154).  His

conviction and sentence were affirmed on appeal by the United States Court of Appeals for the Fifth Circuit on July 14, 2020 (#226).  He did not file a petition for a writ of certiorari.  Taylor previously filed a Motion for Compassionate Release (#222), which the court denied by written order on September 1, 2020 (#231).  The Fifth Circuit affirmed the denial on August 12, 2021, based on Taylor's failure to exhaust his administrative remedies (#255).  The Fifth Circuit added, "[t]o the extent that Taylor's opening brief may be construed as a motion for extraordinary relief in the form of compassionate release, we DENY that motion."  Taylor filed a Motion to Vacate, Set Aside or Correct Sentencing pursuant to 28 U.S.C. § 2255 on February 4, 2021, which remains pending.  *See Taylor v. United States*, No. 4:17-cr-00009-MAC-KPJ-1.  Taylor is currently housed at Federal Correctional Institution Seagoville, located in Seagoville, Texas ("FCI Seagoville").  His projected release date is October 24, 2034.

In the pending motion, Taylor seeks compassionate release based on his medical problems, the inadequate medical care he claims he is receiving at the BOP, the § 3553 factors, and his allegedly wrongful conviction.  The medical conditions upon which he relies include:  depression, diabetes, obesity, hyperlipidemia, hypothyroidism, back pain, heart disease, benign prostatic hypertrophy, vision problems, and dental problems.  Taylor contends that due to these medical conditions, "he is at a huge risk of dying from COVID-19."

II.   Compassionate Release

A.   Controlling Law

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18

U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

B.     Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir.) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*,

3

141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at \*2 (D. N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *Jackson*, 27 F.4th at 1089; *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at \*1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).

Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18

U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Taylor submitted a request for compassionate release to the warden of his facility on August 19, 2021, based on certain health conditions—diabetes, hyperlipidemia, obesity, enlarged prostate, GERD, lower back pain, depression, and hypothyroidism—which he claimed placed him in imminent danger of contracting COVID-19, even though he had been vaccinated.  Warden Zook denied his request on September 2, 2021, stating that Taylor had not met the minimum eligibility requirements for a reduction in sentence based on medical reasons.  On January 2, 2023, Taylor submitted another request for compassionate release, claiming that he suffers from diabetes, hyperlipidemia, GERD, depression, family history coronary artery disease, hypothyroidism, prostatic hypertrophy, and low back pain.  Warden Rivers denied his request on February 22, 2023, again explaining that he had not demonstrated that his request meets the minimum eligibility requirements for compassionate release/reduction in sentence.

In this instance, Taylor is foreclosed from obtaining relief based on his claims of heart disease, vision problems, and dental issues because he has not submitted a request for compassionate release based on these specific grounds to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023). "[T]he exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord Mendoza-Garibay*, 2023 WL 307459, at *2. Although Taylor claimed in his 2023 request to the warden to have a family history of coronary artery disease, his reliance on a family history of heart disease does not suffice to exhaust his administrative remedies with respect to his present claim of heart disease. A family history of certain afflictions and a fear of developing such medical problems do not create a current medical diagnosis, nor do they diminish a prisoner's present ability to provide self-care while incarcerated. *See United States v. Diggles*, No. 9:15-CR-00024-RC, 2020 WL 6471725, at *3 (E.D. Tex. Sept. 9, 2020), *adopted by* No. 9:15-CR-24-RC, 2020 WL 6450469 (E.D. Tex. Nov. 2, 2020). In fact, a review of Taylor's BOP medical records reveals that Taylor is not currently diagnosed as having any type of heart disease nor has he been so diagnosed while incarcerated. A medical record dated April 25, 2023, indicates that, on observation, his cardiovascular system was "Within Normal Limits, Normal Rate," and on auscultation, it presented a "Regular Rate and

6

Rhythm (RRR), Normal S1 and S2." Indeed, in his reply to the Government's response to his motion, filed on August 21, 2023, Taylor notes that BOP medical personnel had recently performed "EKGs [electrocardiograms], labs, and chest X-rays." Taylor then states, "I did NOT need an EKG or CSR, but fine." The medical records confirm that Taylor was informed on March 10, 2023, that his EKG yielded a normal result. His comments suggest that Taylor is well aware that he is not currently suffering from heart disease. His requests for relief from the warden, likewise, contain no mention of vision or dental problems.

Taylor has not exhausted his administrative remedies with respect to his claims of heart disease, vision problems, and dental issues. He makes no mention and gives no indication in his motion that he attempted to exhaust his administrative remedies as to these three afflictions, and there is no evidence before the court that he has sought relief from the warden of his facility based on these conditions. Thus, the court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *See Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the

court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Therefore, at this time, the court does not have the authority to grant Taylor the relief he requests based on his complaints regarding heart disease, vision problems, and dental troubles.

With respect to his medical claims based on depression, diabetes, obesity, hyperlipidemia, hypothyroidism, back pain, and benign prostatic hypertrophy, Taylor appears to have exhausted his administrative remedies. As outlined above, Taylor submitted requests for compassionate release raising these medical conditions in both 2021 and 2023 to the warden of FCI Seagoville, and Wardens Zook and Rivers both denied his requests. Taylor has met the statutory requirements for exhaustion, as he filed his motion for compassionate release well past the 30-day waiting period. *See Garrett*, 15 F.4th at 338 ("[A] prisoner may wait 30 days after filing his request and—whether the BOP has ruled on the request or not—he is free to file a motion in the district court."). Although Taylor complied with the exhaustion requirement with respect to these medical conditions before filing his current motion for compassionate release, nothing in the motion indicates that extraordinary and compelling reasons exist to release him from confinement.

C.   Criteria for Release

The Fifth Circuit has held that when a defendant moves for compassionate release, he must satisfy three criteria. *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022) ("[A] prisoner

seeking compassionate release must overcome three hurdles." (quoting *Jackson*, 27 F.4th at 1089));

*United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  First, he must meet one of two

conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons

that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years

of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C.

§ 3582(c)(1)(A)(ii).  *Shkambi*, 993 F.3d at 391; *see Rollins*, 53 F.4th at 358.   Second, the

defendant "must show that compassionate release is consistent with the applicable policy statements

from the [United States Sentencing Commission ("Commission")]."  *Shkambi*, 993 F.3d at 392;

*accord Rollins*, 53 F.4th at 358.  Third, the defendant "must convince the district judge to exercise

discretion to grant the motion after considering the § 3553(a) factors."[1]  *Shkambi*, 993 F.3d at 392;

*accord Rollins*, 53 F.4th at 358; *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert.*

*denied*, 142 S. Ct. 299 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that

may merit compassionate release.   Rather, Congress elected to delegate its authority to the

Commission.   *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be

considered extraordinary and compelling reasons for sentence reduction, including the criteria to

be applied and a list of specific examples"); *Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287;

---

[1]Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the
defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the
need to protect the public; the need to provide the defendant with needed educational or vocational training,
medical care, or other correctional treatment in the most effective manner; the kinds of sentences and
sentencing ranges established for defendants with similar characteristics under applicable United States
Sentencing Guidelines Manual ("U.S.S.G.") provisions and policy statements; any pertinent policy
statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities
among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

*Shkambi*, 993 F.3d at 392.  Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, described the reasons that qualify as extraordinary and compelling.[2]  The prior version of § 1B1.13 referenced only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  The recently enacted amendments to the Sentencing Guidelines, however, revise § 1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the current policy statement applicable to both defendant-filed and BOP-filed motions.

The amended policy statement set forth in U.S.S.G. § 1B1.13 contains similar, albeit expanded, definitions of "extraordinary and compelling" reasons warranting a reduction in sentence to those set forth in the prior policy statement and the commentary thereto.  Hence, the former policy statement and the cases decided pursuant to it provide insight regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688

---

[2]In former Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission previously defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3]U.S.S.G. § 1B1.13 was previously amended on November 1, 2018.  Until recently, the Commission was unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a).  On August 4, 2022, the United States Senate confirmed seven new members to the Commission, providing the Commission with a quorum for the first time in over three years.  The newly constituted Commission issued proposed amendments to the Sentencing Guidelines on April 27, 2023, which became effective on November 1, 2023.

(2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

      1.   <u>Health and Age</u>

In the present motion, Taylor, age 69, contends that he suffers from the following medical conditions, for which he has exhausted his administrative remedies, and proffers them as the basis for compassionate release:  Depression, Diabetes, Obesity, Hyperlipidemia, Hypothyroidism, Back Pain, and Benign Prostatic Hypertrophy.  The U.S.S.G. provides that extraordinary and compelling reasons exist regarding a defendant's medical condition under the following circumstances:

(1)     Medical Circumstances of the Defendant.—

    (A)     The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-state organ disease, and advanced dementia.

    (B)     The defendant is—

        (i)     suffering from a serious physical or medical condition,

        (ii)    suffering from a serious functional or cognitive impairment, or

        (iii)   experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (C)     the defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and

without which the defendant is at risk of serious deterioration in health or death.

(D)    The defendant presents the following circumstances—

(i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal state, or local authority;

(ii)   due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak or infectious disease or the ongoing public health emergency described in clause (i); and

(iii)  such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(A)-(D).  The Government attached medical records to its response to Taylor's motion for compassionate release, which confirm his diagnoses of Depression, Type 2 Diabetes, Obesity, Hyperlipidemia (high cholesterol), Hypothyroidism, Back Pain, and Enlarged Prostate.  A review of Taylor's Presentence Investigation Report ("PSR"), prepared in April 2019, reveals that he reported having Hyperlipidemia, Hypoglycemia, Hypothyroidism, and Benign Prostatic Hypertrophy.

Taylor's medical records reflect that he is currently prescribed escitalopram oxalate to treat his depression, metformin to control his Type 2 diabetes, aspirin for his Type 2 diabetes, atorvastation to control his hyperlipidemia, levothyroxine to treat his hypothyroidism, meloxicam to alleviate his back pain, finasteride to address his enlarged prostate, and famotidine for gastro-esophageal reflux disease.  Laboratory reports dated May 24, 2023, show his glucose and cholesterol levels to be normal, and a report dated September 15, 2022, reflects a normal hemoglobin A1c level of 5.6, suggesting that his blood sugar level did not indicate the presence of

diabetes.  Taylor's medical records also denote that he was diagnosed with COVID-19 in July 17, 2020, and had recovered by July 31, 2020.

Taylor is classified as a BOP Medical Care Level 2 inmate.  According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months.  Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring.  Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."  None of Taylor's medical conditions are terminal, require specialized care, or substantially diminish his ability to provide self-care within the context of a correctional facility, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release.  *See Thompson*, 984 F.3d at 433.  To the contrary, Taylor's conditions are commonplace and are well managed with medication.  *See id*.  The court acknowledges that, according to the Centers for Disease Control and Prevention ("CDC") website, two of Taylor's underlying medical conditions—Type 2 diabetes and obesity—can make him more likely to become severely ill should he contract COVID-19; nonetheless, such widespread afflictions do not make Taylor's case "extraordinary."  *See id*. at 434.

As previously noted, Taylor's reported medical conditions are not terminal, do not require specialized medical care that is not being provided, do not substantially diminish his ability to provide self-care in the prison setting, and do not limit his activities of daily living.  As Probation points out, "Taylor's medical disorders are chronic in nature; yet his conditions are treatable and controlled."  Probation also relates that "[h]is medical records reflect numerous completed appointments, but also include Mr. Taylor's having missed scheduled appointments on May 15, May

13

10, February 15, and February 13, 2023." Taylor's inmate profile, attached to the Government's response, reveals that he is housed in general population, is ambulatory, has no medical restrictions, has regular duty work assignments, and is cleared for food service. Clearly, Taylor's long-standing affliction with hyperlipidemia, hypoglycemia, hypothyroidism, and prostate hypertrophy did not hamper or prevent him from operating a medical clinic or committing his offense of conviction. *See Rollins*, 53 F.4th at 360 (noting that the defendant "had committed serious crimes while suffering from severe and life-threatening medical complications"). Thus, Taylor has failed to establish the existence of medical problems that would constitute extraordinary and compelling reasons to reduce his sentence.

Although age is not listed as a separate risk factor, the CDC has recognized that increasing age is correlated with adverse outcomes arising from COVID-19. The U.S.S.G. provides that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B). Here, although Taylor is 69 years old, there is no indication that he is experiencing serious deterioration in his physical or mental health because of the aging process. Moreover, Taylor has served approximately 5 years of his 20-year sentence, far below the lesser of 10 years or 75 percent of his term of imprisonment necessary to be considered for compassionate release under this provision.

2.    <u>COVID-19</u>

Taylor expresses concerns about the presence of COVID-19 at the Seagoville facility and further asserts that he is at a "huge risk" of dying from COVID-19, especially upon the new strains

now being discovered.  He alleges that based on his medical conditions, he is a "high-risk" and "vulnerable" patient requiring special concern, contending that he "must be granted a modified sentence."

As set forth above, the amendments to the policy statement now explicitly address the interplay of confinement in federal prison and the outbreak of infectious diseases and/or public health emergencies.  Relief under these provisions is premised on a showing that the defendant is housed at a correctional facility affected or at imminent risk of being affected by an ongoing outbreak of infectious disease or an ongoing public health emergency declared by the appropriate federal, state, or local authority.  *See* U.S.S.G. § 1B1.13(b)(1)(D).  In this instance, as of January 10, 2024, the figures available at www.bop.gov list no inmates (out of a total inmate population of 1,843) at FCI Seagoville as having confirmed positive cases of COVID-19.  The Seagoville facility is currently operating at COVID-19 Operational Level 1, which requires a medical isolation rate of less than 2% and new community positive cases of less than 100 per 100,000 over the past 7 days. Thus, it appears that the facility where Taylor is housed is handling COVID-19 appropriately and providing adequate medical care for the condition.  In addition, according to www.bop.gov, FCI Seagoville, has fully inoculated 1045 inmates. In any event, the federal COVID-19 public health emergency ended on May 11, 2023.  In this situation, Taylor has failed to show that FCI Seagoville is affected with an ongoing COVID-19 outbreak warranting compassionate release.  *See United States v. Babbitt*, No. 13-CR-10100, 2023 WL 7154102, at *3 (C.D. Ill. Oct. 31, 2023); *see also United States v. Casey*, No. 1:15-cr-1-LG-RHW-2, 2023 WL 4306765, at *2 (S.D. Miss. June 30, 2023) ("[B]oth international and domestic health authorities, particularly the World Health Organization, the United States Centers for Disease Control and Prevention, and the federal

government, have made clear that the COVID-19 pandemic has ended."). Hence, Taylor cannot satisfy the prerequisites for obtaining relief based on his concerns about COVID-19 pursuant to U.S.S.G. § 1B1.13(b)(1)(D).

Furthermore, while Taylor expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot adequately mitigate his risk as to COVID-19 in a timely manner. Specifically, he does not contend that the BOP is unable to manage an outbreak within his correctional facility or that the facility is specifically unable to treat Taylor, if he were to contract the virus once again while incarcerated. *See* U.S.S.G. § 1B1.13(b)(1)(D)(iii). The Fifth Circuit and other courts have "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023); *accord United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022) ("[A] generalized fear of COVID-19 does not automatically entitle a prisoner to release." (citing *Thompson*, 984 F.3d at 435)); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Stehley*, No. 3:16-CR-14, 2023 WL 8014078, at *7 (W.D. Pa. Nov. 9, 2023).

Prior to the amendments, courts regularly denied COVID-19-based motions for compassionate release filed by inmates who, like Taylor, had already contracted and recovered from the virus. *See, e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Grimaldo*, No. 4:08-CR-107-SDJ, 2022 WL 4126106, at *6

16

(E.D. Tex. Sept. 9, 2022) (denying compassionate release to inmate who had previously recovered from COVID-19 and also had been vaccinated); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020))); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

As the Government points out, the fact that Taylor is vaccinated and previously recovered from COVID-19 undermines his claim for compassionate release.  In the Fifth Circuit and elsewhere, prior to the amendments, courts denied early release to inmates with a variety of medical conditions who had been vaccinated for COVID-19.  *See United States v. Diaz*, No. 22-4004, 2023 WL 1879404, *2 (5th Cir. Feb. 10, 2023) (affirming denial of compassionate release to inmate suffering from a variety of medical conditions that put him at risk for developing COVID-19 and agreeing with the district court that "the availability of COVID-19 vaccines and treatment options decreases the risks associated with his condition"); *United States v. Gibson*, No. 14-86, 2021 WL 3164176, at *2 (E.D. La. July 27, 2021) ("Courts have held that, once vaccinated, the efficacy of

the COVID-19 vaccines preclude[s] the argument that a prisoner's susceptibility to the disease is extraordinary and compelling for purposes of § 3582(c)(1)(A)."); *United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No. 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Or. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

In his reply brief, Taylor stated, "I am not taking the COVID 19 Booster because of the high risk of blood clots."  He provides no scientific studies substantiating this claim, only vague allegations about other, unidentified prisoners.  Some courts have viewed a rejection of a booster dose as a refusal to provide self-care.  *See United States v. Darby*, No. CR 13-631 (KM), 2022 WL 1423089, at \*6 (D.N.J. May 5, 2022) (treating a fully vaccinated individual's decision to refuse a booster dose as a refusal to be vaccinated); *see also United States v. Arroyo*, No. 05-CR-40028-JPG, 2022 WL 2220908, at \*3 (S.D. Ill. June 21, 2022) (holding that unless an inmate shows he is unable to benefit from the vaccine, an inmate who refuses a booster, just as an inmate who refuses the vaccine, cannot show that the risk of COVID-19 is extraordinary and compelling).  Under these circumstances, Taylor cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take all available measures to mitigate the risk, such as accepting a booster dose.  Indeed, for various reasons, Taylor cannot show that "such risk cannot be adequately mitigated in a timely manner."

Here, Taylor's concerns about the presence of COVID-19 in prison do not constitute extraordinary and compelling reasons for compassionate release under the U.S.S.G. Policy Statement and otherwise provide no basis for relief.

3.      Section 3553(a) Factors

a.      Rehabilitation

Taylor contends that "his § 3553(a) factors . . . provide this Court with reasonable grounds to adjudicate a Compassionate Release upon evaluation of this Inmate's Minimum Pattern Score, his extensive programming and teaching and tutoring, his perfect prison record as a 'model inmate,' and finally, his release and reentry arrangements which shall include a secure home, medical insurance,

19

and Supervised Release." Taylor's argument focuses almost entirely upon his conduct as a prisoner and efforts at rehabilitation.

Regarding rehabilitation of the defendant, the amended policy statement recognizes: "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." Nonetheless, the amendments add a proviso that states: "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d).

Hence, while the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)). Further, "making good use of one's time in prison and regretting one's actions are not grounds for sentence reductions under the First Step Act."

20

*United States v. Polnitz*, No. 17-cr-201-pp, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020). In this situation, however, Taylor has evinced no regret for his actions.

While Taylor has maintained a good disciplinary record while incarcerated, other courts have found a similar argument not to be extraordinary and compelling. *See United States v. Campos*, No. 22-5216,  2022 WL 4298703, at *2 (6th Cir. Aug. 25, 2022) (affirming the denial of compassionate release where the district court found the defendant's disciplinary record with no infractions and rehabilitation "insufficient" in light of his "serious offense," "significant criminal history," and the fact that he "had a substantial amount of his sentence remaining"); *United States v. Parker*, No. 18-CR-138 (JLS), 2023 WL 2806069, at *6 (W.D.N.Y. Apr. 5, 2023) ("[E]ven if [the defendant] lacks a disciplinary record, 'good behavior is not, by itself, a basis to grant compassionate release pursuant to 18 U.S.C. § 3582(c).'" (quoting *United States v. Corin*, No. S7 10 CR 391-64 (CM), 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020))); *United States v. Tillman*, No. 13 Cr. 362 (JPC), 2023 WL 355624, at *4 (S.D.N.Y. Jan. 23, 2023) (declining to grant compassionate release despite the defendant's "clean disciplinary record").

Thus, although Taylor lists a number of commendable achievements and laudable goals, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *see also United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021)

(the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Or. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction; *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release).  As such, even when "considered in combination with other circumstances," Taylor's achievements and efforts toward rehabilitation do not constitute an "extraordinary and compelling reason" for his release.  *See* U.S.S.G. § 1B1.13(d).  Similarly, the court hopes that Taylor will continue to engage in positive activities in prison, but declines to exercise its discretionary authority under § 3582 at this time based on either his medical condition, his age, the threat of COVID-19, or his rehabilitation efforts.  *See Lewis*, 2021 WL 4519795, at *3.

b.      Nature and Circumstances of the Offense

Taylor overlooks the majority of the § 3553(a) factors in his motion and reply, such as the nature and circumstances of his offense, the need to reflect the seriousness of the offense, the need to promote respect for the law and to provide just punishment for the offense, the need to deter criminal conduct, and the need to protect the public.   The nature and circumstances of Taylor's offense of conviction entail his conspiring to distribute controlled substances, including oxycodone, amphetamine salts, hydrocodone, alprazolam, and promethazine with codeine, over a two-year

period.  He prescribed thousands of medications to patients outside the scope of his professional practice and without a legitimate medical purpose, including prescribing Schedule II, III, and IV controlled substances, without a proper medical screening of the patient and in a non-therapeutic manner.  Taylor prescribed opioids and other medications to patients who were known abusers of controlled substances, to patients who were receiving the same prescriptions from other doctors, and to persons who were brought to the clinic by "recruiters" for the purpose of obtaining prescriptions for controlled substances.  Taylor's clinic took in cash proceeds of between $3,000 and $9,000 per day.  A search of his clinic revealed a handgun and a money counter, and a search of his residence produced $21,615 in currency (which were proceeds of the clinic), two handguns, and ammunition. Taylor was found to have abused a position of trust as a licensed physician.  The jury found that Taylor was responsible for the distribution of 114 grams of oxycodone; 580 grams of amphetamine salts; 3,896 grams of hydrocodone; 542 grams of alprazolam; and 279 grams of promethazine with codeine, for a total converted drug weight of 14,312.11 kilograms.  He was sentenced 240 months' imprisonment, the statutory maximum, which was less than the guideline imprisonment range of 292 to 365 months.

In support of his motion, Taylor points to the non-violent nature of his offense of conviction, his being a "model prisoner," and his minimum PATTERN score indicating that he poses a low risk for recidivism.  The Fifth Circuit and other courts have long recognized, however, that continued drug dealing may constitute a danger and threat to the community.  *See United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989); *accord Grimaldo*, 2022 WL 4126106, at *7 (denying compassionate release to inmate found guilty of participating in a drug trafficking conspiracy involving large amounts of cocaine and marijuana despite his completion of numerous programs and saving his

cellmate's life by performing CPR, reasoning that he continues to pose a danger to the community based on the totality of the circumstances); *United States v. Dotrey*, No. 2:13-CR-004, 2021 WL 4191454, at *8 (E.D. Tex. Sept. 15, 2021) (denying compassionate to drug trafficker despite his insistence that his offense was non-violent, he had been rehabilitated, and he had been rated by the BOP as having a low risk of recidivism). "Although a defendant may not have been convicted of a violent crime, 'that does not make his offense any less serious or dangerous to the community.'" *United States v. Thomas*, No. 14-246, 2021 WL 1721014, at *3 (E.D. La. Apr. 30, 2021) (quoting *United States v. Bailey*, No 17-244, 2020 WL 6701533, at *3 (E.D. La. Nov. 13, 2020) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) ("The harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'"))).

Importantly, Taylor has never accepted responsibility for his crime and continues to insist that he "did nothing wrong." He asserts in an attachment to his motion that "[t]he clinic was not a pill mill." This contention is in direct contravention of the Fifth Circuit's assessment that "it is hard to find another Fifth Circuit pill mill case with such overwhelming evidence of guilt." *United States v. Taylor*, No. 19-40435 (5th Cir. July 14, 2020). He further states: "I did nothing wrong according to 12 judges, had NO mens rea and acted in good faith." These "12 judges," however, were not involved in the case at bar, were not present at trial, and have no personal knowledge of the events that transpired at Taylor's clinic. Rather, the "12 judges" who are of paramount importance in this case are the twelve jurors who, after a eight-day trial, found Taylor guilty of engaging in a conspiracy to distribute controlled substances unlawfully from his medical clinic. In addition, when affirming his conviction, three judges of the Fifth Circuit found that "there is substantial evidence of actual knowledge" on the part of Taylor, noting that "the evidence

24

demonstrated that both defendants were subjectively aware of a high probability that some illegal conduct was occurring at the clinic." Taylor's past behavior and his refusal to recognize the wrongfulness of his actions give cause for concern as to his future conduct. Because Taylor continues to assert that he did nothing wrong, his view provides little assurance that he would not continue to engage in similar unlawful activities.

In addition, granting Taylor compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *United States v. Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d 691, 694 (5th Cir. 2020). The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.*; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord Rodriguez*, 27 F.4th at 1100. In the present case, releasing Taylor after he has served only 5 years of his 20-year sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to his criminal conduct.

On balance, compassionate release is not warranted in light of the applicable factors set forth in § 3553(a).

D.     Inadequate Medical Care

Taylor claims in his motion that he "deserves compassionate release because he cannot get adequate medical care at Seagoville FCI and the BOP." He contends that he has been provided "atrocious medical care" and that his basic needs have been denied. Taylor asserts that he has provided, in detail, examples of "the gross medical negligence, malpractice, and deliberate indifference by the Federal Bureau of Prison's medical staff and department." He mentions various inmates whom he contends received improper medical treatment while incarcerated. In his reply, Taylor continues his tirade. He maintains that "[t]he medical care at Seagoville is awful, worse than most third-world countries." He further proclaims that the "United States has a Prison Holocaust."

The U.S.S.G. now provides that extraordinary and compelling reasons exist if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Taylor, however, has not shown that he is afflicted with a condition that requires specialized medical care, that such care is not being provided, and that in its absence he is at risk of serious deterioration in health, much less death. *Id*. Rather, Taylor's motion contains numerous general complaints about the quality of medical care, but such complaints are not cognizable via a motion for compassionate release brought under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Gix*, No. 3:18-CR-00154-03, 2022 WL 879356, at *5 (W.D. La. Mar. 23, 2022) (holding that challenges to the quality of medical care received while in BOP custody cannot be addressed in a compassionate release motion); *accord Schipke v. Van Buren*, 239 F. App'x 85,

85-86 (5th Cir. 2007) (finding that claims pertaining to perceived injustices regarding medical treatment and the conditions of detention are properly brought in civil rights actions (citing *Bivens v. Six Unknown FBI Agents*, 403 U.S. 388 (1971); *Spina v. Aaron*, 821 F.2d 1126, 1127-28 (5th Cir. 1987)).  The *Gix* court explained:

> Challenges to manner and execution of sentence or conditions of confinement are more properly redressed in a habeas petition under 28 U.S.C. § 2241.  For challenges to sufficiency of medical care, Gix must file a *Bivens* lawsuit after exhausting her administrative remedies.

Hence, Taylor's claims of inadequate medical care provide no basis for relief under U.S.S.G. § 1B1.13(b)(1)(C) and are thus properly asserted through an avenue other than 18 U.S.C. § 3582(c)(1)(A).

E.    Wrongful Conviction

In his motion and reply, Taylor repeatedly maintains that he "did nothing wrong" and has been wrongfully convicted.  He attributes his conviction, *inter alia*, to prosecutorial misconduct, ineffective assistance of defense counsel, and perjury by witnesses.  Taylor exclaims, "Dr. Taylor and Ms. Lee did NOT deserve to be in prison anymore than Jews deserved to go to death camps in NAZI Germany.  And both Dr. Taylor and Ms. Lee have been given 'Death by Prison Sentences!'"  Taylor, however, cannot utilize a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) to raise a wrongful conviction claim.

The Fifth Circuit has held explicitly that "a prisoner cannot use § 3582(c) to challenge the legality or duration of his sentence."  *Escajeda*, 58 F.4th at 187.  The Fifth Circuit has joined several other federal courts of appeal in reaching that result.  *See United States v. Jenkins*, 50 F.4th 1185, 1202 (D.C. Cir. 2022); *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022); *United*

*States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022; *United States v. Hunter*, 12 F.4th 555, 567 (6th Cir. 2021).  The court elaborated:

> Section 3582(c)(1)'s authorization for compassionate release stands in contradistinction to other statutes that Congress passed to govern prisoners' post-conviction proceedings.  In Chapter 153 of Title 28, Congress provided specific avenues for post-conviction relief that permit prisoners to challenge the legality of their confinement in federal court.  *See, e.g.*, 28 U.S.C. §§ 2241, 2244, 2254, 2255.  The Supreme Court has repeatedly held that by codifying these specific provisions, Congress *required* prisoners to bring their legality-of custody challenges under Chapter 153 and *prohibited* prisoners from bringing such claims under other, more-general statutes like 42 U.S.C. § 1983.

*Escajeda*, 58 F.4th at 186-87.  This "habeas-channeling rule" likewise "forecloses using compassionate release to correct sentencing errors."  *Id.* at 187 (quoting *Jenkins*, 50 F.4th at 1202).  "Because Escajeda's claims would have been cognizable under § 2255, they are not cognizable under § 3582."  *Id.* at 188; *accord McMaryion*, 2023 WL 4118015, at *1.  Like *Escajeda*'s claims, Taylor's "claims are the province of direct appeal or a § 2255 motion, not a compassionate release motion."  *Id.* at 187.  Taylor did not prevail on direct appeal, but he has filed a § 2255 motion, which remains pending.  That is the appropriate avenue for Taylor to seek relief on his wrongful conviction claim.

III.   Conclusion

In sum, Taylor has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere under 18 U.S.C. § 3582(c)(1)(A)(i).  The 240-month sentence of imprisonment imposed upon Taylor for conspiring to distribute controlled substances comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison

at this juncture.  Neither his health, his age, the threat of COVID-19, nor his efforts at rehabilitation merit a reduction of sentence under these circumstances.

Accordingly, Taylor's Motion for Compassionate Release (#259) is DENIED.

SIGNED at Beaumont, Texas, this 11th day of January, 2024.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE